UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JAN 1 1 2021**

JEFFREY P. COLWELL
CLERK

Aimee O'Neil,

      Plaintiff,

v.

James Beemer,

Owner of The Sports Station

      Defendant,

ORIGINAL COMPLAINT

The Plaintiff alleges:

1. Jurisdiction 42 U.S.C. 12101 of The Americans with Disabilities Act of

1990

2. Diversity Jurisdiction

3. The plaintiff, Aimee O'Neil, resides at 9717 Sandmist Avenue, Las Vegas,

Nevada, 89134

4. The defendant, James Beemer, owns and operates The Sports Station,

409 N. Railroad Ave., Loveland, Colorado 80537

5. The plaintiff was employed at The Sports Station Restaurant from

    April 2019 until December of 2019 as a restaurant food server

6. The plaintiff is physically disabled

7. The plaintiff alleges the owner, James Beemer, engaged in discriminatory

Employment policies. On or about the 29th day of November, 2019, prior

And thereafter, I was harassed, intimidated, and threatened serious physical

Bodily harm, in a Federal Conspiracy of my rights. I was subjected to

Unequal terms and conditions based on my disability, mobility impairment,

And was retaliated against for engaging in a federally protected activity,

Employment.

8. The plaintiff was warned immediately upon hire that co-worker Angie

Richardson, was aggressive in personality, and stated he thought I could

"handle" dealing with her, which is not a job duty as a restaurant server.

The responsibility of human resources, falls constructively on the owner,

James Beemer. I was not retained for human resources conflicts.

Richardson began targeting me, based on, as she said, threats of

Physical bodily harm, being imposed through her, on behalf of Charlene

O'Neil.

9. I made multiple complaints to James Beemer regarding the situation,

As Angie Richardson, was consuming alcohol on the job, which

Intensified her already aggressive behavior and conduct.

10. Angie Richardson would act in a manner that she was in authority

Of making job, scheduling, and other management decisions, in which

She was not but was being encouraged to violate Federal laws by a

Charlene O'Neil, the main conspirator

10. On November 29, 2019, Angie Richardson, stated, " your mother

Says you're a stupid, retarded, handicapped, fucker, who can't serve

Food, and better find a job doing something else." The incident was

Immediately reported to James Beemer.

11. I retained the investigative services of Mr. Leigh Hunt, retired head

Of The New York State Police, as Charlene O'Neil, is dangerous in any

Capacity. Mr. Hunt deemed this situation a HATE crime

12. On December 3, 2019, Angie Richardson said my mother wanted her

To break every bone in my body, if I didn't leave the property. I reported

This immediately to James Beemer.

13. I was on Colorado Parole at the time, under supervision with Taylor

Isham, because I was required to discuss this activity and situation.

14. I contacted Mr. Hunt who contacted Mr. Isham, who contacted the

Police, Loveland Police Report 487-2020-01191, incident 20-0002-9973.

15. On or about the 3rd day of December Mr. Isham pulled me from

Employment deeming the condition to be a health and safety hazard.

16. I was roommates with Angie Richardson's best friend. A lot of

"strange" discriminatory acts were conspiring than as Charlene

O'Neil was communicating with her to compromise my physical health

And safety.

17. I was instructed to pack, move, anywhere in the State of Colorado,

Due to the significance of compromised physical safety I could move

About the state as needed and I was required to complete a mandated

Reporting class to report each little criminal thing Charlene O'Neil

Conspired.

18. I was forced out of housing and employment by no fault of my own,

Which was than investigated with Mr. Leigh Hunt and Mr. Taylor

Isham, which both deemed unsafe employment

19.. Mr. Isham stated, the employer is responsible for comproising

Your health and safety, no matter who conspired with who

20. 18 U.S.C. Conspiracy of rights

21. A Federal Right to Sue letter was issued

Wherefore the petitioner prays for relief as would deem appropriate

Including severance wage pay

Dated: January 6, 2021

Aimee O'Neil
9717 Sandmist Avenue
Las Vegas, Nevada 89134
702-302-0481



*Digital Signature is VALID*

From: UI - CDLE, CDLE_

To: Aimee ONeil

Re: Unemployment benefits

1/5/2021 2:18:01 PM

Hello,

If your account is postponed it means you have exhausted all of your extended benefits. Unfortunately, as of December 26, 2020 all extended benefit programs have expired. Currently, the Colorado Department of Labor and Employment is waiting for new provisions to be launched to release money to people who have exhausted their benefits. If there are any changes made CDLE will notify you immediately.

Thank you.

On Mon, Dec 28, 2020 at 6:40 PM Aimee ONeil <whereintheworldisaimee@gmail.com> wrote:
   Dear Administrator,



# INDUSTRIAL CLAIM APPEALS OFFICE

Docket Number: 19444-2020
Social Security: XXX-XX-6368

IN THE MATTER OF THE CLAIM OF:

AIMEE L ONEIL,

           Claimant,

v.

BEEMALICIOUS LLC,

           Employer.

FINAL ORDER

The employer has appealed the hearing officer's decision that was issued on July 27, 2020. The hearing officer determined that the claimant is entitled to an award of unemployment benefits pursuant to § 8-73-108(4)(c), C.R.S. (unsatisfactory working conditions). We affirm and do not change the hearing officer's decision.

The hearing officer found that the claimant, a server, was forced to quit this job pursuant to an order from her parole officer. The claimant was subjected to potential physical violence at work from a female coworker. The coworker told the claimant, who is physically disabled, that she would break every bone in the claimant's body. This occurred on approximately November 17, 2019, following an argument between the claimant and the coworker. The claimant reported this to her parole officer, who then ordered the claimant to quit immediately and required the claimant to quit the job and move to another area in order to avoid physical harm. The claimant complied with the instruction and resigned immediately by not showing for scheduled shifts and moved from Loveland to Denver.

The hearing officer concluded that the claimant quit due to a significant degree of risk to the claimant's health. The hearing officer was persuaded by the claimant's testimony that she was physically threatened at work by a coworker and was required to quit and move to another area pursuant to an order from her parole officer. Although the hearing officer recognized that the reason for the claimant's sudden resignation was substantially beyond the employer's control, the coworker's threat against the claimant constituted an objectively unsatisfactory working condition. Colorado law provides for an award of benefits under these circumstances.

AIMEE L ONEIL
Docket Number: 19444-2020
Page 2

On appeal, the employer alleges that the claimant was already discharged from probation before the "so called" incident occurred. The employer asks that the claimant provide to the hearing officer proof of probation discharge and statement from probation officer, stating that she was required to quit immediately and move. The employer further alleges that documentation that the claimant had provided shows that she was discharged November 6, 2019. However, it is each party's responsibility to arrange for the presentation of its own evidence. *Wafford v. Industrial Claim Appeals Office*, 907 P.2d 741 (Colo. App. 1995). We note that the hearing notice stated in bold: "This will be your last chance to present testimony and documents about this case." *See also Frank v. Industrial Commission*, 96 Colo. 364, 43 P.2d 158 (1935) (parties are to present all of their evidence at the appointed hearing). Furthermore, the reverse side of the hearing notice indicates that subpoenas to compel the production of records may be requested in writing from the Appeals Section. *See* Regulation 11.2.19, 7 Code Colo. Reg. 1101-2 (concerning the procedure for requesting a subpoena to compel the testimony of a witness and production of records). There is no indication from the record that the employer requested prior to the hearing that the Appeals Section issue a subpoena to the claimant for any documents, and the employer did not ask the hearing officer to consider whether a subpoena should be issued. We are also not persuaded that there is any error in the award.

To the extent that the employer is disputing the claimant's testimony and the hearing officer's findings, it is solely the responsibility of the hearing officer to weigh the evidence, to assess credibility, to resolve conflicts in the evidence, and to determine the inferences to be drawn. *See Goodwill Industries of Colorado Springs v. Industrial Claim Appeals Office*, 862 P.2d 1042 (Colo. App. 1993). We may not reweigh the factual record and enter findings of our own or draw inferences different from those of the hearing officer. Here, the hearing officer credited the claimant's evidence. We may only interfere with the hearing officer's credibility determinations in extreme circumstances, such as where the testimony believed by the hearing officer was rebutted by such hard, certain evidence that it would be error as a matter of law to credit it. *See Halliburton Services v. Miller*, 720 P.2d 571 (Colo. 1970). That is not the case here, and we are not at liberty to disturb the hearing officer's findings. Furthermore, a hearing officer has discretion to rely on a witness's testimony despite the absence of corroborating evidence. *See, e.g., Lymburn v.*

AIMEE L ONEIL
Docket Number: 19444-2020
Page 3

pursuant to an order from her parole officer. Since this finding is supported by the evidence, we may not change it. *See Pero v. Industrial Claim Appeals Office*, 46 P.3d 484 (Colo. App. 2002). It is therefore those circumstances that determine the claimant's entitlement.

A worker is entitled to unemployment benefits if she is unemployed through no fault of her own. Section 8-73-108(1)(a). "Fault" for these purposes does not necessarily mean culpability but is defined as a volitional act or the opportunity to exercise some control in the totality of the circumstances. *See Collins v. Industrial Claim Appeals Office*, 813 P.2d 804 (Colo. App. 1991). However, because quitting is volitional, it is generally unnecessary to consider whether the claimant is at "fault" for the separation from employment. Instead, the pertinent consideration is whether an award is warranted under the statute. *See Cole v. Industrial Claim Appeals Office*, 964 P.2d 617 (Colo. App. 1998).

Section 8-73-108(4)(c) provides that an employee who quits her employment because of unsatisfactory working conditions is entitled to an award of unemployment benefits. Whether the working conditions are unsatisfactory is to be determined by an objective standard; that is, whether a reasonable individual in the circumstances would find the conditions to be so unsatisfactory as to warrant resignation. *See Rodco Systems, Inc. v. Industrial Claim Appeals Office*, 981 P.2d 699 (Colo. App. 1999). The statute provides for consideration of various factors, including the risk to the claimant's health, safety, and morals. Based on the hearing officer's findings, we agree with the hearing officer's determination that a reasonable person in the claimant's circumstances would find the working conditions to be unsatisfactory and would quit. An award is therefore proper under § 8-73-108(4)(c).

**IT IS THEREFORE ORDERED** that the hearing officer's decision issued July 27, 2020 is affirmed.

INDUSTRIAL CLAIM APPEALS PANEL

Lisa A. Klein

John A. Steninger

| **COMPLAINT OF DISCRIMINATION**<br>The Privacy Act of 1974 affects this form.<br>See Privacy Act Statement before completing this form. | EEOC Complaint No.<br><br>CCRD Complaint No.<br>E2000008020 |
|---|---|

| *COLORADO CIVIL RIGHTS DIVISION AND EEOC* | | |
|---|---|---|

| Name   *(Complainant)*<br>Aimee O'Neil | | (Area Code) Telephone<br>(702) 302-0481 |
|---|---|---|

| Street Address<br>6500 W. Charleston Blvd<br>#268 | City, State, and Zip Code<br>Las Vegas, NV, 89146 | County<br>Clark |
|---|---|---|

The Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency who discriminated against me is:

| Name   *(Respondent)*<br>Beemalicious LLC d/b/a<br>Sports Station | Number of Employees<br>15+ | (Area Code)  Telephone<br>(970) 461-8825.<br>Email Address<br>office@sportsstationco.com |
|---|---|---|

| Street Address<br>409 N. Railroad Ave. | City, State, and Zip Code<br>Loveland, CO 80537 | County<br>Larimer |
|---|---|---|

| Discrimination Based on:<br>Disability (Physical); Retaliation | Date Most Recent Discrimination Occurred:<br>December 3, 2019 |
|---|---|

I.   **Jurisdiction**: The Colorado Civil Rights Division and Equal Employment Opportunity Commission have jurisdiction over the subject matter of this charge and the named Respondent, pursuant to the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, *et seq.*), as reenacted, and the Americans with Disabilities Act of 1990 (42 U.S.C. 12101, *et seq.*), as amended.

II.   **Personal Harm:** On or about November 29, 2019, prior and thereafter, I was harassed and subjected to unequal terms and conditions of employment, based on my disability (mobility impairment) and/or in retaliation for engaging in protected activity.  On or about December 3, 2019, I was constructively discharged based on my protected class and/or in retaliation for engaging in protected activity.

III.   **Respondent's Position:** Unknown.

IV.   **Discrimination Statement:** I believe I was unlawfully discriminated against because: of my protected class and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA). 1.) I began employment with the Respondent in or around April 2019, performed my job duties satisfactorily at all times, and my most recent job title was Server. 2.) In or around April 2019, the Respondent's Owner, James Beemer ("Beemer"), told me he thought I could "handle" one of my coworkers, Angie Richardson ("Richardson") after Richardson began to harass me about my disability. 3.) In or around April 2019, and thereafter, I engaged in protected activity when I complained to Beemer about Richardson's ongoing harassment based on my disability. 4.) On or about November 29, 2019, Richardson threatened to attack me and mocked my disability. 5.) I immediately notified Beemer about Richardson's continued harassment; however, the Respondent refused to take action to stop Richardson's harassment and permitted her to work her usual shifts while reducing my

scheduled hours. 6.) On or about December 3, 2019, I was constructively discharged when my Parole Officer determined the Respondent's work environment was unsafe and required that I resign. 7.) I believe that I was discriminated against based on my protected class and/or in retaliation for engaging in protected activity.

**V.**   **WHEREFORE:** The Complainant prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

*I want this charge filed with both the Equal Employment Opportunity Commission and the State or local agency, if any. I will advise the agency if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.*

**I declare under penalty of perjury that the foregoing is true and correct.**

Date                                Charging Party/Complainant (Signature)

# Leigh F. Hunt

## Security Services

## 200 Summit Avenue, Syracuse

## New York 13207

leighfhunt@AOL.Com

(315) 263-5044

To whom it may concern in the Matter of Amiee O'Neil v. various parties

I am a licensed Private Investigator licensed by the State of New York and have been retained on various occasions by Ms. Aimee O'Neil since the beginning of 2004

During the last eighteen months Ms. O'Neil has reported to me that she is being continually harassed, followed, spied upon, her numerous phones being tapped and numerous other harassment tactics. She has reported that on several occasions, men unknown to her have come up to her tried to engage her in conversations indicating that they knew all about her and made comments that frightened and alarmed her.

At one point early on in one of the previous investigations on behalf of Ms. O'Neil and in conversation with Mr. John Mazzoli he related to me the bad blood between his ex-wife Dawn that his ex-wife told him she would follow Ms. O'Neil forever.

During the time that Ms. O'Neil was in Colorado I maintained constant contact with her by phone and text messages. Ms. O'Neil was concerned that people she had known for an exceptionally long time were now acting different toward her. I advised her that often it was because other individuals had made comments about her and unfortunately, they were believed and influenced.

I made several attempts to locate and interview John Mazzoli with negative results. I was however able to interview John Mazzoli's father who stated that he knew nothing about Amiee O'Neil and had not seen or heard from her since before she left New York State. At the time that I spoke with Mr. Mazzoli I tried to speak with his wife Gloria Mazzoli however she refused to speak with me and asked me to leave the property which I did.

In furtherance of this investigation and in an attempt to get the reported harassment of Ms. O'Neil to cease and desist I contacted her mother by phone which consisted of a very short conversation in which she stated she had no interest in her daughter Amiee whatsoever and didn't even know where she was living at that time, however it had been reported that Aimee's Mother had a young woman threaten to kill Amiee out of hate and jealousy, verified by Ms. O'Neil. Most recently I again attempted to contact Aimee's mother by phone with

negative results. Ms. O'Neil is fortunate to have enlisted the aid of her aunt who has reportedly connections in government through which she is working on getting information for her niece Amiee.

John Mazzoli has been a person of interest as Mr. Mazzoli and Ms. O'Neil were close friends at one time and Ms. O'Neil believes that with the aid of his mother Gloria Mazzoli, he is influencing individuals to keep track of and harass her.

Of utmost importance currently is the belief by Ms. O'Neil that somewhere on her person is a microchip or some other type of sophisticated device allowing for the monitoring of not only her location but also possibly monitoring her conversations.

I have strongly advised Ms. O'Neil to get this thoroughly checked out as soon as possible keeping in mind current conditions.

Most recently Ms. O'Neil has advised me that remembering her time in New York State and the fact that Mr. Mazzoli had reportedly obtained many jobs for individuals with Alcan Aluminum Company that there is a possibility, according to Ms. O'Neil, that this company might be assisting Mr. John Mazzoli .

Leigh F. Hunt

Leigh F. Hunt Security Services is licensed by New York State, Department of State, Division of Licensing Services